IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER GEORGE KNOX                                    PLAINTIFF

v.                        Civil No.  16-5088

DR. KARAS, Karas Health Care                               DEFENDANT

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

Defendant filed a summary judgment motion (Doc. 24). To assist Plaintiff in responding to the motion, a questionnaire was propounded (Doc. 37). Plaintiff's response to the questionnaire was filed as his response to the summary judgment motion (Docs. 43 & 47).

Plaintiff is currently incarcerated in the Omega Technical Violator Center in Malvern, Arkansas. The claims at issue in this case arose when Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Plaintiff contends Defendant denied him adequate medical care when he discontinued Plaintiff's prescription for Xanax causing Plaintiff to suffer withdrawal and an increase in panic attacks; discontinued his pain medication without providing him adequate relief from pain; and discontinued a number of Plaintiff's other prescriptions and substituted others without ever having seen the Plaintiff.[1]

---

[1] During his deposition, Plaintiff testified that he had meant to add a claim against Nurse Practitioner Kelley Oliver and a claim that Defendant and his staff quit seeing the Plaintiff after he filed this lawsuit. The complaint was not amended to assert these claims and they will not be addressed here.

-1-

## 1. Background

Plaintiff was booked into the WCDC on March 26, 2016.  Doc. 43 at 6, ¶ 6.  He remained incarcerated there until June 16, 2016.  Doc. 26-10 at 72; Doc. 26-4 at 1; Doc. 43 at 29, ¶ 53.

Dr. Karas is the sole member and principal of Karas Correctional Health, P.L.L.C., an Arkansas Medical Limited Liability Company.  Doc. 26-11at 1, ¶ 4.  Karas Correctional is the contract medical provider for all detainees at the WCDC.  *Id.* at ¶ 5.

In response to an intake questionnaire, Plaintiff reported taking Xanax,[2] Paxil,[3] Lisinopril,[4] Aspirin, Omeprazole,[5] and Tramadol.[6]  Doc. 26-5 at 1; Doc. 43 at 6, ¶ 7.  He indicated he had been diagnosed with bi-polar disorder, post traumatic stress disorder (PTSD), borderline personality disorder, and panic disorder.  Doc. 26-5 at 1; Doc. 43 at 7, ¶ 8.  Plaintiff did not mention back pain on his intake questionnaire.  During his deposition, Plaintiff testified he had also been diagnosed with acid reflux, high blood pressure, and degenerative disc disease. Doc. 126-10 at 19.

---

[2]Xanax is a brand name for the drug alprazolam.  "Alprazolam is used to treat anxiety disorders and panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks). Alprazolam is in a class of medications called benzodiazepines. It works by decreasing abnormal excitement in the brain." https://medlineplus.gov/druginfo/meds/a684001.html (accessed July 21, 2017).

[3]Paxil is a brand name for the drug paroxetine.  "Paroxetine [is] used to treat depression, panic disorder (sudden, unexpected attacks of extreme fear and worry about these attacks), and social anxiety disorder (extreme fear of interacting with others or performing in front of others that interferes with normal life)." https://medlineplus.gov/druginfo/meds/a698032.html (accessed July 21, 2017).

[4]"Lisinopril is used alone or in combination with other medications to treat high blood pressure." https://medlineplus.gov/druginfo/meds/a692051.html (accessed July 21, 2017).

[5]"Prescription omeprazole is used alone or with other medications to treat gastroesophageal reflux disease (GERD), a condition in which backward flow of acid from the stomach causes heartburn and possible injury of the esophagus (the tube between the throat and stomach)." https://medlineplus.gov/druginfo/meds/a693050.html (accessed July 21, 2017).

[6]"Tramadol is used to relieve moderate to moderately severe pain." https://medlineplus.gov/druginfo/meds/a695011.html (accessed July 21, 2017).

-2-

On March 26, 2016, Plaintiff submitted a medical request via the electronic kiosk system stating that he was starting to go through withdrawals from not having his Xanax. Doc. 26-1 at 1; Doc. 43 at 7, ¶ 9. He testified he had last taken the medication on the evening of March 25, 2016. Doc. 26-10 at 30. He believed it took approximately twelve hours for the medication to get out of your system. *Id* at 29.

Plaintiff testified he was also experiencing an increase in back pain because he was not receiving Tramadol. Doc. 26-10 at 31. However, he does not believe he went through withdrawal from the Tramadol. *Id.* at 32.

On March 27, 2016, Plaintiff was informed that a nurse would speak to him that evening about "detoxing off your Xanax." Doc. 26-10 at 31; Doc. 43 at 8 ¶¶ 10-11. Additionally, a prescription was entered for Plaintiff by medical staff for "detox screening." *Id.*

Defendant performs a medication reconciliation of all inmates reporting use of prescription medications that involves calls to the patient's pharmacy to verify all active prescriptions. Doc. 26-1 at 2; Doc. 26-11 at 3, ¶ 8. On March 28, 2016, all Plaintiff's prescriptions were verified through Walgreens. Doc. 26-1 at 2; *see also* Doc. 26-7.

On March 28, 2016, Defendant authorized the continuation of the prescriptions for Paxil, Lisinopril, Famotidine,[7] and subsequently Aspirin. Doc. 26-3 at 1; Doc. 26-11 at 3, ¶ 9. Defendant did not prescribe Tramadol, Xanax, Latuda, or Flomax. Doc. 26-11 at 3, ¶ 11. According to Dr. Karas, Karas Correctional does not typically prescribe Tramadol, an opioid pain

---

[7]"Prescription famotidine is used to treat ulcers (sores on the lining of the stomach or small intestine); gastroesophageal reflux disease (GERD, a condition in which backward flow of acid from the stomach causes heartburn and injury of the esophagus [tube that connects the mouth and stomach]); and conditions where the stomach produces too much acid, such as Zollinger-Ellison syndrome (tumors in the pancreas or small intestine that cause increased production of stomach acid)." https://medlineplus.gov/druginfo/meds/a687011.html (accessed July 21, 2017).

medication, "opting instead to use other therapeutic replacements that are [in Dr. Karas' medical judgment] better suited for administration in the correctional environment." *Id.* at ¶ 12.    In Plaintiff's case, he was not immediately given any substitute medication for pain.

Similarly, Karas Correctional does not typically prescribe benzodiazepines, of which Xanax is one, "as part of its mental health protocols, opting instead to use other medications that are [in Dr. Karas' medical judgment] better suited for administration in the correctional environment." *Id.* at ¶¶ 13-14.    Plaintiff was continued on Paxil which is also used to treat panic disorder.

According to Karas Correctional's policies, after review of the intake questionnaire, all detainees reporting bipolar disorder or PTSD are to be put on the mental health provider list. Doc. 26-8 at 9.  It does not appear this was done in the Plaintiff's case.  Plaintiff put in a request on March 26, 2016, to speak to the psych nurse.  Plaintiff submitted a second request to see the psych nurse on April 14, 2016.  He was seen by the psych nurse for the first time on April 19, 2016.

Plaintiff objected to having his prescription medications changed without being seen by a doctor or consulted.  Doc. 26-1 at 2; Doc. 42 at 4, ¶ 3.  He stated he was being forced to withdraw from prescription medications.  Doc. 26-1 at 2; Doc. 42 at 5, ¶ 5. On March 28, 2016, Plaintiff spoke to a nurse and said that he had begun experiencing cold sweats, mild seizures, diarrhea, and vomiting.  Doc. 43 at 9, ¶¶ 12-14.  The nurse did not take his vitals or physically examine him.  *Id.* at ¶ 14.

Plaintiff was advised that it was up to the provider at the jail what medications would be prescribed.  Doc. 26-1 at 2.  He was told there were many medications they did not allow.  *Id.*

-4-

On March 29, 2016, Plaintiff submitted a medical request asking to be seen by a nurse because he was in "bad shape" and had a painful blood clot in his left hand. Doc. 26-1 at 1; Doc. 43 at 12, ¶ 20. The following day, he was put on the sick call list. *Id.* However, Plaintiff asserts that the blood clot was not treated. Doc. 43 at 13, ¶ 21; Doc. 47 at 12, ¶ 21 (Specifically, Plaintiff states: "The doctor evaluated these later and diagnosed them as something which I do not know but no treatment or medications were given").

Defendant maintains a "detox protocol" for patients who are withdrawing, or are likely to experience withdrawal, from addictive substances. Doc. 26-8 at 7-8. The protocol requires patients to be put on a detox screen list to be seen by a provider at each medication pass to have withdrawal symptoms assessed. *Id.* Patients receiving a Clinical Institute Withdrawal Assessment (CIWA) score of 8 or higher are prescribed a course of Chloridiazepoxide, Thiamine, and multivitamins. *Id.* at 8; *see also* Doc. 26-11 at ¶¶ 24-30.

Because Plaintiff had been on Xanax, he was placed on the detox screen list from March 27, 2016, through April 3, 2016. Doc. 26-3 at 1; Doc. 26-11 at 4, ¶ 21. The purpose of the detox screen is "to monitor patients going through withdrawals for potentially harmful or life threatening complications." Doc. 26-11 at 4, ¶ 22. In Plaintiff's opinion, merely being asked to recite the symptoms he was experiencing without being "treated" in anyway showed a "lack of concern" and "deliberate indifference." Doc. 43 at 34, ¶ 64 & 35. He points out that there is no indication that the alleged "scoring" system was used in his case; he was only given nausea medication on one occasion; and he received nothing to otherwise alleviate the withdrawal symptoms he was experiencing. *Id.* at 35.

-5-

According to Defendant's records, Plaintiff did not come to med pass to be seen for detox screening on the evening of March 27th, the morning of March 28th, the morning of March 29th, the morning of April 1st, or the morning of April 2nd.  In response, Plaintiff asserts that he was unaware of the fact that the "detox screening" protocol required him to come up to the med cart and answer questions.  Doc. 43 at 11, ¶ 16.  Plaintiff said he was so ill he "was barely aware of [his] surroundings."  *Id.*  When he had been previously detained at the WCDC, medical staff called out your name when you needed to come to the med cart to take medication.  *Id.* at ¶¶ 17-18.

Plaintiff was seen at med pass for detox screening the evening of March 28th (reporting vomiting, sweating and seizures), the evening of March 29th (reporting nausea, gastric pain, diarrhea and cold sweats), the evening of March 30th (reporting sweats, nausea, vomiting and diarrhea), the morning of March 31st (reporting nausea, vomiting, lack of sleep, lack of appetite, headache and not feeling well), the evening of March 31st (reporting feeling bad), the evening of April 1st (reporting that he feels sick but overall feels ok), the evening of April 2nd (reporting feeling ok), the morning of April 3rd (no remarks written), and the evening of April 3rd (reporting feeling like he was getting sick but that he was ok).  Doc. 26-4 at 22-25.  On April 1st, Plaintiff was prescribed Promethazine for nausea.  Doc. 26-3 at 2; Doc. 43 at 16, ¶ 26.  Plaintiff testified his withdrawal symptoms lasted "well into a week."  Doc. 26-10 at 59; Doc. 43 at 16, ¶ 16 (symptoms subsided within a week).  According to Defendant, Plaintiff's condition did not rise to the level that other medications were required.  Doc. 26-11 at 5, ¶ 28.

Plaintiff testified he did not suffer any kind of permanent injury or impairment as a result of going through withdrawal.  Doc. 26-10 at 84-85.  During the seizure stage, he "hit" his head

-6-

and "bruised" himself "up some."  Doc. 43 at 18, ¶ 30; *see also* Doc. 47 at 17, ¶ 30 (also listing body aches).  He testified he suffered an increase in panic attacks, anxiety, paranoia and suffered some depression as a result of being taken off his mental health medications.  Doc. 26-10 at 78-79; Doc. 43 at 19, ¶ 33; Doc. 47 at 18, ¶ 33 (suffered an additional amount of anxiety and emotional distress).  He testified he felt like he was just left out there to deal with everything himself.  Doc. 26-10 at 79.

Karas Correctional's policies also provide that inmates reporting back pain are to have their vital signs taken, a "Complete Physical Exam Pathway in medical record," and be prescribed naproxen for three days unless contradicted because of peptic ulcer disease or weight loss surgery.  *Id.* at 9-10.  The inmate is to be instructed that if he is no better after taking the naproxen he should place another request on the kiosk.  *Id.* at 10.  If a second request is received, the inmate is to be placed on the doctor call list.  *Id.*

Plaintiff's first request for medication for back pain was made on April 21, 2016.  On April 25, 2016, a second mat was ordered for the Plaintiff at night and he was started on naproxen.  Tylenol was added and on May 27, 2016, he was given back exercises to do.  He was advised if that did not help to put in another request.  On June 2, 2016, he reported he was still having back pain despite having done the exercises.  In response, he was told they would check into this further.  Plaintiff was continued on naproxen.  Dr. Karas indicated Plaintiff was on the "max dose" of pain medications.  There is no indication in the record that other pain medications were considered.

The medication distribution list indicates Plaintiff received the first dose of his prescribed medications, Paxil, Lisinopril, and Famotidine, on March 31, 2016.  Doc. 26-4 at 23.  The list

-7-

indicates Plaintiff refused his medications on March 29th. *Id.* However, Plaintiff indicated he was unaware that he had medication on the cart. Doc. 43 at 12, ¶ 19. The list does not contain any notation regarding the medications for March 30th. Doc. 26-4 at 23.

Plaintiff also sought medical care because he was breaking out, Doc. 26-1 at 1, coughing up dark green stuff, *id.* at 3, a knot on his left wrist, *id.,* chest pains, *id.* at 6, having panic attacks, *id.* at 7-8, left wrist pain, *id.* at 7, and toe nail fungus, *id.* at 9.

With respect to the bi-polar disorder, he was eventually placed on Seroquel (quetiapine). Doc. 26-3. He was told that the Arkansas Department of Correction (ADC) had to approve that medication for ADC committed inmates. Doc. 26-10 at 39. However, Plaintiff testified that the ADC does not allow the use of quetiapine. Doc. 26-10 at 39. Dr. Karas indicates that certain medications including anti-psychotics must be approved for use by the ADC on any ADC committed inmates. Doc. 26-11 at 4, ¶ 17-20. The ADC health services request form was printed on April 4, 2016. Doc. 26-3 at 3. Once the ADC approved the quetiapine,[8] Plaintiff began receiving it on April 25, 2016. Doc. 26-11 at 4, ¶ 20. Despite this, Plaintiff continued to complain of panic attacks.

Plaintiff testified that it was about a month before he was seen by anyone other than the assistants or nurses that did med call. Doc. 26-10 at 36-37. He testified he was first seen by Nurse Practitioner Kelley Oliver. *Id.* He states he was seen by Dr. Karas a single time on May 17, 2016. Doc. 47 at 31, ¶ 63.

The following provides a time line of Plaintiff's requests and the responses made thereto:

---

[8]The record does not indicate what date the ADC approval was received.

•3/26/2016--request to see the doctor to order medications and complaint he was breaking out and needed cream;

•3/26/2016--request to speak with "psych nurse" or someone soon;

•3/26/2016--starting to go through withdrawal from Xanax;

Response (3/27/2016): "we will call your pharmacy to get a medication verification to give to the doctor so he can order them. We will have the nurse talk to you tonight about detoxing off your xanax."

Prescription added (3/27/2016) for detox screening;

Prescriptions added (3/28/2016) for Paxil, Lisinopril, and Famotidine.

•3/29/2016--have been asking to see the nurse in bad shape and also found blood clot of his left hand that was painful;

Response (3/30/2016): "on sick list"

**Nurse Visit** (3/30/2016): "[D]etoxing off Xanax currently on detox screen."

•3/31/2016--asking why he was only getting three of his medications and pointing out he had not been seen by the doctor yet and was being force to withdraw from medications;

Response (4/4/2016): "When you are booked in we get a medication list from the pharmacy that you use. We list those medications and let the provider review them. Your current meds may or may not be approved in here. There are many medications we do not allow. Your medication list was verified, which is why you are on some of the medications you were on. The others were not approved by the provider."

•4/1/2016--coughing up dark green stuff;

Prescription added (4/1/2016) for Promethazine start date 4/1 end date 4/3;

Response (4/2/2016): "added to nurse call;"

Records received (4/2/2016): medical records from UAMS;

•4/3/2016--have another knot on left wrist and it is swelling and very painful;

Response (4/7/2016): "on sick call"

•4/4/2016--stating he did not feel a provider could simply look at a list and determine what medications he needed and stating he knew there were no prohibited medications;

**Nurse Visit** (4/4/2016): Left wrist has three small nodules tender and painful.  Pepcid not working requests omeprazole.

Record Review (4/5/2016): Verified from UAMS records bi-polar, htn, depression, gerd, urinary retention, panic attacks, history of chest pain.  Medications prior to intake: aspirin, klonopin, lisinopril, omeprazole, tramadol.  "[W]ill start medication I want to resume."

•4/7/2016--medical is not giving me the right medication and I cannot see the doctor who is changing the medication;

**Nurse Visit** (4/7/2016): Coughing up mucus and allergies will prescribe ceterizine;

Prescription added (4/7/2016) for ceterizine start date 4/7 end date 4/21;

Response (4/8/2016): Told by Corporal Mulvaney that he would need to discuss medication issues with medical staff;

•4/13/2016--asking for the name and address of the healthcare company and the doctor's name;

Response (4/14/2016): "When you are brought in you[r] med list is given to the provider for review.  The provider decides what meds you can be on in here and what meds you can[']t.  You will not always receive all of the meds you got outside of this jail.  It is the same process for everyone.  Our name is Karas Correctional Health.  The Dr[.] is Dr[.] Karas.  This is the only information you are entitled to.

•4/14/2016--need to see the "psych nurse" and talk about medications;

Response (4/14/2016): "on psych list;"

**Psych Visit** (4/19/2016): Social worker (SW) Shelia Bryant met detainee.  He reported bipolar, depression, PTSD, panic disorder, and sexual abuse as child, etc.  SW obtained copy of his mental records from Perspectives Behavioral Health Management that he had with him.  Detainee stated he had taken Latuda, Xanax, and Paxil.  SW will give records to doctor for his review;

Record reviewed (4/20/2016): Recorded diagnosis were: bipolar, PTSD, panic disorder, sexual abuse as a child, child emotional abuse, sexual abuse, borderline personality

-10-

disorder, hypercholesterolemia, ha,[9] degenerative disc disease cervical, psycho-social and environmental problems.  Will increase Paxil and add a substitution for Latuda per SW;

Prescription added (4/20/2016) for quetiapine with a start date of 4/25;

•4/21/2016--frequent chest pains and have panic disorder not on the right medications am I ever going to see the doctor;

•4/21/2016--also need meds for my back;

Response (4/23/2016): "added to dr call;"

**Nurse Visit** (4/25/2016): Denies chest pain at this time.  Reports history of gerd, anxiety, PTSD, bipolar, and an irregular echo.  Requested approval from ADC for bipolar medication seroquel.  Will perform EKG and troponin today to rule out myocardial infarction.

Prescription added (4/25/2016) for a second mattress at night and naproxen with a start date of 4/26 end date of 6/10 and low dose aspirin with a start date of 4/25;

Prescription added (4/26/2016) for omeprazole;

•5/4/2016--need to see the social worker for panic attacks the last couple of days;

Response (5/5/2016): "on her list;"

**Psych Visit** (5/5/2016):  Met with SW. Detainee reported having panic attacks and increased anxiety.  Informed that he had recently started on Seroquel and he needed to give it more time to work before changing or increasing it and he agreed;

•5/9/2016--left wrist is hurting badly and am out of Paxil;

Response (5/10/2016): "on doctor list;"

**Doctor Visit** (5/12/2016): Seen by Dr. Karas.  Left wrist examined and determined to be a small ganglion cyst.  The plan was to observe as it was not infectious or dangerous.  "Dr. Karas reviewed patients current medication regiment with patient which he was agreeable to;"

•5/12/2016--having more panic attacks also want to know if the doctor has reviewed my records from UAMS regarding my heart problem;

---

[9]Headache.

Response (5/13/2016): "Mr. Knox I cannot see anywhere in your chart where we have heard from UAMS. We have printed the ADC request form, would you like to see the nurse for your panic attacks?"

**Nurse Visit** (5/13/2016): Seen by Nurse Practitioner Kelley Oliver. Seen regarding complaints of left wrist pain. Plan was for physical therapy on the wrist two times per day via exercise sheets in the pod for six weeks on his own, rest, ice, and continue nsaids and add Tylenol for forty-five days. "[D]etainee verbalized understanding of treatment plan, agreed with the treatment plan, and reported he had no other medical/mental health concerns at this time. he thanked me for the visit and returned to pod." Prescriptions added for acetaminophen, ice, and wrist exercise sheet.

•5/15/2016--would like to see nurse;

Response (5/16/2016): "placed on nurse call;"

**Nurse Visit** (5/17/2016): "pt was assessed. pt hands shaking and he thought he was having bp issues. 110/80 79HR 95% 19 respirations and sugar 108. he does have anxiety hx. told him to lay down and do some deep breathing tech. see if that helps. anything changes let us know."

Prescription Added: Second Mattress at night;

Detainee refused psych visit (5/20/2016).

•5/23/2016--my back is really bothering me can barely walk up and down the stairs;

Response (5/23/2016): "added to nurse call;"

**Nurse Visit** (5/26/2016): Saw Nurse Phebe Grotheaus. "reported back pain and anxiety, currently prescribed naproxen and Tylenol, adding to dr. list and psych list;"

Review (5/27/2016): Dr. reviewed medications and "pt is currently at max dose with pain medications" will order back exercise sheet;

Response (5/27/2016): "Back exercise sheets will be provided at med pass. [P]rovider request if back issues continue after a week of exercise to please put in another request in the kiosk, thank you." Prescription added for back exercise sheet;

•5/27/2016--what about my anxiety attacks;

Response (5/29/2016): "you are on the mental health call list;"

-12-

•5/30/2016--getting a fungus on my toenail;

Response (5/30/2016): "added to nurse call;"

**Psych Visit** (6/1/2016): Seen by SW. "He reported having anxiety due to court date coming up. SW processed with him for awhile and he stated he felt better, less anxiety, and did not need meds changed or adjusted. He reported still having back pain, but has been doing the exercises on the exercise sheet and they are helping;"

•6/2/2016--still having back problems the exercises are not helping please get my medical records to verify my condition;

Response (6/4/2016): "we will check into this further;"

•6/5/2016--have been told I was on nurse call but have yet to be seen and also told to put in another request if my back was not better and have done so and the response was will look into it further what does it mean;

**Nurse Visit** (6/7/2016): Seen by Nurse Phebe Grotheaus. "[W]ill add pt to dr. list due to ongoing back issues and previous attempts not helping--back exercise, double mat and Tylenol and naproxen;"

Record Review (6/10/2016): "Patient reviewed medical records. Documented history of bipolar, panic attacks, depression, PTSD, personality disorder. No change in treatment plan at this time;"

Record Review (6/12/2016): "Provider will continue naproxen. No change to plan of care at this time." Prescription added for naproxen with a start date of 6/12/2016 and end date of 8/11/2016.

Docs. 26-1; 26-2; 26-3; 26-4.

In his deposition, Plaintiff summarized his problem with the way his medications were

handled as follows:

> To me, healthcare providers should understand that the use of certain medications and the abrupt stopping of those medications can lead to serious issues, even in some cases, they said, you know, seizures, diarrhea, vomiting, you know, severe -- and I'm not sure, you know, I think I've heard, you know, it could even lead to death. I don't -- I don't know.

AO72A
(Rev. 8/82)

But any abrupt stopping of any mental health medications is dangerous, and then being able to change the medication without consulting with anyone, even though I'm in a correctional setting, there should be some -- some procedure to where they can address any medical issues.

I believe that they interfered with my mental health and medical issues and that being professional and providers they should have treated some of those -- they have other medications they can use to treat withdrawals and things like that.

And I remember going through booking. They asked specifically if, you know, "Are you coming off any benzodiazepines?"

So having been honest and having verified, they should've understood that there was a -- a probable reason that, you know, I needed to be placed on some type of medication to, at least, you know, they -- they use a stair-step method to kind of get you off, you know, within a few days.

I think that -- them completely just waiting several days before even addressing my medication and waiting a month to see a doctor, they were pretty indifferent to what I was going through.

Doc. 26-10 at 43-44. Plaintiff has sued the Defendant in both his individual and official capacities. Doc. 43 at 4, ¶ 2.

## 2.  Applicable Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." National Bank of Commerce v. Dow Chemical Co., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." National Bank, 165 F.3d at 607 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." Id. (citing, Metge v. Baehler, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3. Discussion

Defendant moves for summary judgment arguing that: he did not exhibit deliberate indifference to the Plaintiff; he is entitled to qualified immunity; and there is no basis for an official capacity claim.

### (A).  Denial of Medical Care

The Eighth Amendment's prohibition against cruel and unusual punishment establishes the "government's obligation to provide medical care for those whom it is punishing by incarceration.  An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.  Estelle v. Gamble, 429 U.S. 97, 103 (1976)(internal quotation marks and citation omitted). "For this reason, the Eighth Amendment proscribes deliberate indifference to the serious medical needs of prisoners." Robinson v. Hager, 292 F.3d 560, 563 (8th Cir. 2002)(citing Estelle, 429 U.S. at 104).  However, the Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris v. Thigpen, 941 F.2d 1495, 1510 (11th Cir. 1991).

In order to succeed on a denial of medical care claim, an inmate must show both that he had an objectively serious medical need and that the defendant was deliberately indifferent to

-15-

that need. Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997)(citations omitted). "A medical need is serious when it has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Phillips v. Jasper County Jail, 437 F.3d 791, 795 (8th Cir. 2006)(citation omitted). "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation." Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)(citation omitted).

"The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." Meuir v. Green County Jail Employees, 487 F.3d 1115, 1118 (8th Cir. 2007). "[A] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Taylor v. Bowers, 966 F.2d 417, 421 (8th Cir. 1992).

Plaintiff first claims that Defendant acted with deliberate indifference when he forced the Plaintiff to go through withdrawal from Xanax. Defendant does not dispute that he refused to prescribed Xanax or that Plaintiff suffered from withdrawal symptoms. However, he argues the record establishes that Plaintiff was promptly added to the list of inmates to be seen for detox screening and symptom assessment. Plaintiff was also continued on Paxil which is used to treat panic disorders. Defendant asserts that in his medical judgment, Plaintiff's condition did not

-16-

merit additional intervention.  Defendant argues that Plaintiff's claim amounts to nothing more than a difference of opinion as to how his withdrawal should have been treated.

I believe there are genuine issues of material fact that preclude entry of summary judgment in Defendant's favor on this claim.  Defendant merely makes the blanket statement that he typically does not prescribe Xanax.  However, there is no indication in the record that he examined, spoke to, or reviewed Plaintiff's medical records at any time before making this decision.  Plaintiff was given no medication other than for nausea to combat the withdrawal symptoms.  While he did undergo screening, this consisted merely of Plaintiff going to the med cart and describing his symptoms to the med cart nurse.  It does not appear that his vitals were taken or that he was otherwise monitored throughout the day.  There is no indication that the CIWA score mentioned in the detox protocol was calculated.  On the summary judgment record there is a genuine issue of material fact as to whether Defendant's conduct exhibited deliberate indifference to the Plaintiff's serious medical needs.

Further, Defendant did not follow his own protocol which required any detainees who indicated on their intake questionnaire that they had bipolar or PTSD to be placed on the list to see the mental health provider.  Doc. 26-8 at 9.  Plaintiff saw the social worker only after he put in a medical request asking to see the psych nurse.  Once Plaintiff was finally prescribed Seroquel, it turned out not to be effective, at least in the dosage given, because Plaintiff continued to report panic attacks. These facts may also be considered in determining if Dr. Karas evidenced deliberate indifference to Plaintiff's serious mental needs.

Next, Plaintiff contends Defendant exhibited deliberate indifference by discontinuing the Tramadol without providing adequate pain relief.  I believe there are genuine issues of material

-17-

fact as to this claim also. Defendant discontinued the pain medication without examining the Plaintiff, his records, or even inquiring as to why Plaintiff was on pain medication. Plaintiff was given no substitute for the pain medication initially. Plaintiff reported and continued to report back pain with no apparent consideration given to prescribing anything other than naproxen or Tylenol which Plaintiff said were not working.

While I agree that normally a decision to discontinue medication prescribed by an outside physician is one based on medical judgment, I am not sure the same can be said when the decision is based on nothing more than the Plaintiff's responses to an intake questionnaire and a list of his current medications. There is nothing in the record to indicate that Plaintiff's medical records, other than his prescription records, were examined, he was examined, or he was even spoken to before the decision was made. I believe a genuine issue of fact exists as to whether this conduct constitutes deliberate indifference.

### (B). Qualified Immunity

Qualified immunity "is a means of protecting government officials from vexatious lawsuits questioning the discretionary performance of their duties." Johnson-El v. Schoemehl, 878 F.2d 1043, 1048 (8th Cir. 1989). Analyzing a claim of qualified immunity requires a two-step inquiry. Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012). "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." Robinson v. Payton, 791 F.3d 824, 828 (8th Cir. 2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009).

-18-

There is sufficient evidence in the record that Plaintiff needed treatment for his mental health issues as well as for chronic pain. Without inquiring into these needs, Defendant made multiple changes in Plaintiff's prescription medications. Viewing the facts in the light most favorable to the Plaintiff, there is sufficient evidence that would allow a jury to conclude that Defendant acted with deliberate indifference to Plaintiff's serious medical needs. The answer to the first qualified immunity inquiry is yes.

The second inquiry is whether the right was clearly established at the time of the violation. The right must be defined "in light of the specific context of the case, not as a broad general proposition." Saucier v. Katz, 533 U.S. 194, 201 (2001). "[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014)(citation and internal quotation marks omitted).

"A detainee's right to medical treatment is clearly established." McRaven v. Sanders, 577 F.3d 974, 980 (8th Cir. 2009)(citation omitted). It is clearly established that a delay in responding to a prisoner's serious medical needs constitutes deliberate indifference. Roberson v. Bradshaw, 198 F.3d 645, 647 (8th Cir. 1999).

Plaintiff was forced into withdrawal, without his medical records having been examined, or his having been physically evaluated. Plaintiff reported symptoms, including an increase in panic attacks, that would suggest medical intervention was necessary yet nothing was done to further monitor the Plaintiff or provide him medication to alleviate his suffering. McRaven, 577 at 983 (Failure to consult test results. "This fact raises an inference or recklessness, if not incompetence, precluding qualified immunity"); Ingram v. Helder, 2015 WL 9999574 (W.D.

-19-

Ark. Dec. 21, 2015)(delay in prescription medication at the beginning of incarceration--facts as set forth could support denial of a clearly established constitutional right).

Similarly, it is clearly established that the failure to provide some to provide some type of pain management when the Defendant was aware of the disability or condition causing the pain was clearly established.  See e.g, Johnson v. Neiman, 2009 WL 5176652, *3 (E.D. Mo. Dec. 22, 2009).  Defendant is not entitled to qualified immunity.

### (C).  Official Capacity Claim

Defendant argues the Plaintiff has failed to point to unconstitutional policy, custom, or practice that was the moving force behind the alleged constitutional violations.  I agree.

In Monell v. Department of Social Services, 436 U.S. 658 (1978), the Court held that a municipality could not be held liable simply because it employed the tortfeasor.  Id. at 691.  In other words, a respondeat superior theory of liability did not apply.  Id.  Instead, liability was dependent on official policy or action.  Szabla v. City of Brooklyn Park, Minn., 486 F.3d 385, 389 (8th Cir. 2007)(citations omitted).

Similarly, "a corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies.  The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983" Sanders v. Sears, Roebuck & Co., 984 F.2d 972, 975-76 (8th Cir. 1993)(citation omitted).

In this case, Plaintiff has not alleged the detox policy or any other policy or custom of Karas Correctional Health was the moving force behind the alleged violations of his constitutional rights.  Instead, he maintains the Defendant deliberately discontinued the Xanax and then "did not follow the policy which he has in place for withdrawals." Doc.  47 at 33, ¶¶

-20-

64-65.  Further, he maintains the Defendant had a policy of abruptly discontinuing certain medications which could be harmful if stopped. *Id.* at 65.  The Defendant is entitled to summary judgment on any official capacity claims.

### 4.  Conclusion

For the reasons stated, I recommend the Defendant's motion for summary judgment (Doc. 24) be **DENIED** and the case scheduled for a jury trial.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 24th day of July 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)